2026 IL App (1st) 240830-U

No. 1-24-0830

Order filed June 18, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 2936 |
| | ) | |
| ANDRE WARDELL, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for criminal sexual assault is affirmed where the evidence was sufficient to establish that he committed an act of sexual penetration and used or threatened force, and where the trial court did not plainly err by allegedly considering a fact not in evidence.

¶ 2    Andre Wardell was convicted after a bench trial of two counts of criminal sexual assault and sentenced to consecutive eight year terms. Wardell contends that the State failed to prove his guilt on one count because a witness's testimony about Wardell's whereabouts contradicted the

victim's. Alternatively, Wardell alleges the trial court plainly erred by improperly basing its guilty findings on a fact not in evidence, and that trial counsel was ineffective for not preserving the issue for review.

¶ 3    The trial judge carefully considered the evidence and made a well-reasoned decision based on all the evidence. The trial court found the victim's testimony credible, and the discrepancy regarding the date of the first assault did not create reasonable doubt. The absence of an underlying error forecloses Wardell's alternative claims of plain error and ineffective assistance. We affirm.

¶ 4                                    Background

¶ 5    Wardell was charged with two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2020)), alleging that between December 1, 2020, and May 20, 2021, he knowingly committed two separate acts of sexual penetration on the victim, A.R., specifically, contact between his penis and the sex organ of A.R. by using or threatening force.

¶ 6    At trial, A.R. testified that in December 2020, she lived with her mother, stepfather, and siblings. A.R. and her sister slept in a bunk bed in a bedroom near the home's front room. Wardell, a relative, sometimes stayed in the front room with his girlfriend. Wardell stayed in A.R.'s home "in December of 2020, going into January of 2021."

¶ 7    A.R. related that, as to the first incident, Wardell and his girlfriend went out with her mother and stepfather around New Year's 2021 to celebrate the holidays. After the four adults returned, the children went to bed. Wardell entered A.R.'s bedroom, and approached her as she lay on her side in the top bunk. He rubbed her thigh over her clothes. A.R. repeatedly told Wardell to leave and pushed his hands away, but he told A.R. to "shh" and continued touching her. He climbed the bunk bed ladder, sat on the top bunk, and touched A.R. as he climbed further onto the bed. He

lowered his pants, then hers, and inserted himself into her vagina from behind without her consent. A.R. cried. Wardell climbed off, asked why she was crying, and left. Sometime afterward, A.R. experienced genital irritation and discomfort during urination.

¶ 8    Regarding the second incident, A.R. testified that after a family party on May 18, 2021, Wardell entered her bedroom. When she told him to leave, he said "he was on the phone with a girl" and "didn't want to be on the phone" around his girlfriend. Wardell remained in the room as A.R. "left him alone" and fell asleep. Later, she woke when Wardell reentered the room. She told him to leave and he "kept saying shh, shh," and "be quiet." He climbed onto her bed, and as she lay on her stomach, he pinned her hands above her head. Wearing a latex glove on one hand, he forced her face into the pillow. He lowered his pants, then hers, and forcibly penetrated her vagina without her consent. A.R. cried, waking her sister who was asleep on the bunk below. Wardell tried to wipe something sticky from A.R.'s leg, and raised her pants before climbing off the bed and apologizing. While crying and huddling in the corner of the bed, A.R. told her sister to get their mother.

¶ 9    Wardell left the girls' bedroom, closed the door, and stood in the hallway, blocking A.R.'s sister from leaving. He told the girls that he was sorry and that he loved them. He eventually left, and A.R.'s sister ran from the room.

¶ 10    A.R. also left the room. Wardell followed her downstairs to A.R.'s mother's room. While Wardell watched from a hallway, A.R. told her mother that Wardell had touched her. Wardell spoke over A.R., denying her claim. Her mother took A.R. outside for a walk, and Wardell left the house. Shortly after that, A.R. visited the hospital.

¶ 11    On cross-examination, A.R. testified that she did not remember the exact date of the first incident, but said it occurred "around New Year's." Defense counsel asked if the date "was either the 31st of December" or "the 1st of January." A.R. responded, "Yes," explaining that the four adults went out while she and her siblings stayed home. She could not recall when the adults returned but remembered speaking briefly with them and then going to bed.

¶ 12    A.R. did not tell anyone about the first incident until after the second incident occurred. Sometime after her hospital visit, the doctor informed A.R. that she tested positive for chlamydia. A.R. then told her mother about the first incident.

¶ 13    On redirect examination, A.R. clarified that before Wardell penetrated her the first time, she had told him more than three times not to touch her. She did not speak to anyone about the first incident because she was afraid.

¶ 14    A. R.'s sister testified that, during the late evening of May 18, she woke and saw A.R. "in the corner of the bed, balled up, crying." Wardell stood in front of the bed, apologizing. A.R. told her to "go tell [their mother]," but Wardell stood in the bedroom doorway. She tried shoving Wardell with her shoulder. She eventually got out of the room and ran downstairs to her mother. She told her mother that Wardell had touched A.R. As her mother rose from bed and dressed, A.R. entered and said that Wardell had touched her. Wardell stood at the doorway, apologizing, "If he sat on [A.R.'s] leg or anything." While their mother took A.R. for a walk, Wardell and his girlfriend packed their clothes and left.

¶ 15    A.R.'s mother testified that Wardell and his girlfriend moved into her home in November or December 2020. She recalled that A.R. attended a party on May 18 and returned home after 11 p.m. After A.R. went to bed, her sister came downstairs, woke her mother, and told her that A.R.

was crying and wanted to leave the house. A.R. came downstairs, sat on the bed, and rocked back and forth, crying while holding her own legs.

¶ 16    Wardell stood in the doorway to the bedroom, repeatedly shouting, "I'm sorry," to A.R. A.R. refused his apology, stating, "You were supposed to protect me. How could you do something to me?" His girlfriend came downstairs just as A.R. told her mother that Wardell had touched her. The girlfriend and Wardell argued, and A.R.'s mother took A.R. outside for a walk. When they returned, Wardell and his girlfriend were gone. A.R. visited the hospital the next day.

¶ 17    Britney Cabrera, a sexual assault nurse, testified that on May 20, she examined A.R., collected a urine sample, and retrieved a white substance from A.R.'s labia. On cross-examination, Cabrera testified that, according to her examination notes, A.R. stated that Wardell had been living in A.R.'s home for two months.

¶ 18    Christopher Webb, an Illinois State Police forensic biologist, testified as an expert in forensic DNA analysis. Webb explained that he implemented a PCR-STR DNA analysis on buccal swabs collected from Wardell and blood collected from A.R. He compared the DNA profiles developed from the samples against the DNA present in the white substance collected from A.R.'s labia and determined that the results could not exclude A.R. and Wardell as contributors. Webb stated that, based on the DNA results, Wardell could be the male donor and that the male DNA from the white substance "would be expected to occur in one in 11 sextillion unrelated individuals." On redirect, Webb added that he believed there were about 7 billion people on Earth.

¶ 19    The defense called the girlfriend, who testified that she and Wardell lived with Wardell's mother in 2020, and Wardell never lived with A.R. during 2020. She and Wardell moved in with A.R.'s family in March or April 2021. Wardell stayed there "off and on" for as long as she had

known him, but she could not recall any time in 2020 when she and Wardell lived with A.R.'s mother. She and Wardell were "together day and night" from the time they met until his incarceration.

¶ 20    The girlfriend also testified that she was with Wardell all night on New Year's Eve 2020. They left his mother's home around 10 or 10:30 p.m. and met A.R.'s mother at another relative's home, where they were detained by police until 4:30 or 5 a.m. due to allegations of a shooting. Afterward, they returned to Wardell's mother's home. They were together for the entire evening, and did not see A.R. until "maybe a week or so later."

¶ 21    On cross-examination, she testified that on the evening of May 18, 2021, everyone was watching movies in the living room. It was the day before her son's birthday, so they prepared for it and relaxed. A.R. and Wardell acted normally. Wardell went to bed before her that evening. She then clarified that the family watched movies together on May 17, and that May 18 was the day before her son's birthday. On May 18, she went out with Wardell to collect copper and returned home around 3:30 a.m. Wardell said he would shower, and she fell asleep. When she awoke, Wardell and A.R.'s mother were arguing downstairs, and A.R. was in her mother's room.

¶ 22    Following closing arguments, the court found Wardell guilty on both counts. In announcing its ruling, the court found A.R.'s testimony to be credible, "logically consistent," and unimpeached. Regarding the date of the first incident, the court explained, "the accounts that [A.R.] gave was that around 12-30 or 12-31, she remembered the adults went out. It may have been New Year's Eve. It may not have been New Year's Eve. But the time frame [alleged] is sometime between December 1st of 2020 and May 20th of 2021."

¶ 23     The court concluded that the girlfriend's testimony regarding Wardell's whereabouts on New Year's Eve 2020 was not impeached because she lacked documentation about her detainment. The court further noted that although she "ha[d] some bias" as Wardell's girlfriend, she remained a credible witness. The court explained, however, that "the fact that I believe her testimony does not in any way cast reasonable doubt[,] as the incident that [A.R.] alleged the first time might have been another night. It might not have been that December 31st."

¶ 24     Defense counsel moved for a new trial or to reconsider the findings of guilt, asserting that Wardell was not proven guilty beyond a reasonable doubt on both counts. As to count I, counsel asserted that A.R.'s testimony was insufficient because it lacked corroboration. Counsel asserted that "the defense thought [the first occurrence] was New Year's Eve, but it turned out that it could have been any time around that." The court denied Wardell's motion.

¶ 25     After a hearing, the court sentenced Wardell to consecutive terms of eight years' imprisonment.

¶ 26                                  Analysis

¶ 27     On appeal, Wardell contends that the State failed to prove his guilt of count I beyond a reasonable doubt because the girlfriend's testimony refuted A.R.'s account that the criminal sexual assault occurred on New Year's Eve or New Year's Day.

¶ 28     When reviewing a challenge to the sufficiency of the evidence, this court considers whether, when viewing the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Padilla*, 2021 IL App (1st) 171632, ¶ 41. "A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible

explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Eubanks*, 2019 IL 123525, ¶ 95. We will not retry the defendant or substitute our judgment for that of the trier of fact, who is charged with "assessing the credibility of the witnesses and the weight to be accorded their testimony, resolving conflicts in the evidence, and drawing reasonable inferences therefrom." *Padilla*, 2021 IL App (1st) 171632, ¶ 42. Rather, we must allow all reasonable inferences from the record in favor of the State. *Eubanks*, 2019 IL 123525, ¶ 95.

¶ 29    We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt as to guilt. *People v. Wright*, 2017 IL 119561, ¶ 70. "[T]he testimony of a single witness, if positive and credible, is sufficient to convict even if it is contradicted by defendant." *People v. Patterson*, 2022 IL App (1st) 182542, ¶ 33.

¶ 30    The State bears the burden of proving each element of an offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. As charged, a defendant commits criminal sexual assault by committing an act of sexual penetration and threatening force. 720 ILCS 5/11-1.20(a)(1) (West 2018).

¶ 31    Wardell argues the evidence was insufficient to prove beyond a reasonable doubt that the first incident occurred because his girlfriend's testimony as to his whereabouts on December 31, 2020, and January 1, 2021, refuted A.R.'s testimony that Wardell sexually assaulted her "around New Year's." Specifically, Wardell points to (1) A.R.'s cross-examination, in which defense counsel asked A.R., "So it was either the 31st of December or the night of the 1st of January;

correct?" and A.R. responded, "Yes," and (2) to the girlfriend's testimony that Wardell was not with A.R. on those dates.

¶ 32    Wardell's argument essentially asks this court to reweigh the credibility of the witnesses and supplant the trial court's inferences. But the trial court, as the trier of fact, resolved these inconsistencies. See *Padilla*, 2021 IL App (1st) 171632, ¶ 42. The court was free to accept or reject as much or as little of each witness's testimony as it found credible. *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 62. Here, the trial court stated that it believed both A.R. and the girlfriend. As to the first incident, the court found A.R. credible because of the clarity and specificity of her testimony. A.R.'s credible testimony is, alone, sufficient to convict. *Patterson*, 2022 IL App (1st) 182542, ¶ 33.

¶ 33    Moreover, the court's credibility assessment of the girlfriend's testimony fails to establish that reasonable doubt exists. Her testimony as to Wardell's whereabouts on the two dates did not directly refute A.R.'s testimony because, as the court noted, A.R. testified that she was uncertain of the date of the first incident. "A witness's inability to remember exact dates and times, by itself, does not create reasonable doubt." *People v. Nevilles*, 2021 IL App (1st) 191388, ¶ 59.

¶ 34    Similarly, the existence of discrepancies which do not "detract from the reasonableness of [the] story as a whole" will not establish reasonable doubt. See *People v. Foley*, 206 Ill. App. 3d 709, 715 (1990). The court reasonably inferred that the first assault "might have been another night," within the range of dates alleged, "around New Year's," as A.R. testified. Accordingly, neither A.R.'s uncertainty over the date of the incident, nor the girlfriend's testimony as to Wardell's whereabouts on December 31, 2020, or January 1, 2021, render the evidence so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt as to Wardell's guilt.

¶ 35    We are not persuaded by Wardell's argument that the trial court made an "unreasonable inference" as to the date of the first incident because it found the girlfriend credible. As stated, the trial court was free to accept or reject as much of her testimony as it found credible. *Joiner*, 2018 IL App (1st) 150343, ¶ 62. Moreover, the State was not required to prove the date of the incident to secure a conviction for criminal sexual assault. See *People v. Brennan*, 2023 IL App (2d) 220190, ¶ 42 (State is not required to prove date of incident where date is not essential element of crime, and statute of limitations is not involved).

¶ 36    Wardell's reliance on *People v. Dye*, 2015 IL App (4th) 130799, is misplaced. There, we reversed a defendant's conviction for threatening a public official, where the State was required to prove that the statement "I'm gonna get you" was a "true threat." *Dye*, 2015 IL App (4th) 130799, ¶ 12. We reasoned that, absent additional evidence to prove the required element of intent, determining whether the defendant intended to physically threaten the public official was akin to "flipping a coin." *Id.* We concluded that "[w]e should draw only *reasonable* inferences in favor of the prosecution" rather than "random speculations." (Emphasis in original.) *Id.* In contrast, the trial court here did not "randomly speculate" as to the date of the first offense. Indeed, the trial court relied on A.R.'s testimony that Wardell sexually assaulted her "around New Year's" when it reasonably concluded that the first offense occurred on a date "around New Year's."

¶ 37    In reaching this conclusion, we reject Wardell's alternative contention, argued for the first time on appeal, that the court "disregard[ed] [the girlfriend's] reliable testimony by considering a fact that was never presented at trial," namely, the date of the first incident. Wardell concedes that he forfeited this claim of error having failed to raise it before the trial court. Instead, he requests

plain error review or a finding that counsel provided ineffective assistance for failing to properly raise the issue. We first address the issue of plain error.

¶ 38     The plain error rule provides for a narrow exception to a defendant's forfeited claim of error. *People v. Williams*, 2022 IL 126918, ¶ 48. We may review unpreserved issues for plain error where a clear or obvious error occurred and (i) "the defendant's conviction may have resulted from the error, not the evidence," or (ii) "the defendant's conviction resulted from a flawed process, despite the evidence." *Id.* ¶ 55. Accordingly, "the threshold inquiry is whether there was an error at all." *Id.* ¶ 49.

¶ 39     A trial court's consideration of facts not in evidence, or the failure to properly recall or consider the crux of the defense when entering judgment, may deprive a defendant of a fair trial. *People v. Williams*, 2013 IL App (1st) 111116, ¶¶ 81-91 (collecting cases). Here, however, the trial court's statement on which Wardell relies—"I believed [the girlfriend], she was credible, but *** her testimony doesn't undermine the victim's testimony because it could have been that New Year's Eve or the night before"—does not establish that the court relied on a fact not in evidence.

¶ 40     First, the court made the statement at a hearing on Wardell's post-trial motion, not in finding Wardell guilty. See *People v. Devalle*, 182 Ill. App. 3d 1, 4 (1989) (finding that record did not affirmatively show that trial court considered improper evidence where comments in question were made 65 days after defendant was found guilty). Second, the record shows that the court considered both the testimony of A.R. and the girlfriend, as well as the allegations in the charging documents, when it inferred that the first incident may not have occurred on December 31, 2020, or January 1, 2021, but occurred "around New Year's of 2021" as A.R. testified, which was within the time frame alleged by the State.

¶ 41    No error having occurred, the request for plain error review lacks merit. See *People v. Hillier*, 237 Ill. 2d 539, 549 (2010) (rejecting claim of error where record shows no error). Absent error, we need not consider Wardell's alternative claim that counsel was ineffective for failing to preserve the issue for review. *People v. Hanson*, 238 Ill. 2d 74, 115 (2010) (reasoning that, absent error, ineffective assistance claim necessarily fails).

¶ 42    Affirmed.